Judge Rowan
delivered the opinion of the court.
Joseph and Nicholas Lewis on the 4th day of November, 1815, in virtue of part of a Virginia treasury warrant, No. 19,010, and part of an entry thereori, procured a survey of 137f acres of land in Nelson county, to be made by the surveyor of that county in their names; and on the 17th of that month, assigned the survey, by endorsement on the plat and certificate thereof, to Robert Haggin, vvbo lodged the said plat and certificate of survey in the office of the Register of the land office. Haggin, on the 30th day of October, 1816, applied at the land office, to the register thereof, for a grant thereon. The register refused to issue the grant; whereupon the said Haggin applied to the Franklin circuit court for, and obtained from that court, a mandamus nisi, directed to the register, returnable immediately. To which writ the register returned for cause of his refusal to issue the grant aforesaid, “that the act of the general assembly, approved February 10th, 1816, had not been complied with by the applicant;” and thereupon the court awarded a peremptory mandamus against the register — from which opinion of the court this appeal was taken.
The correctness of the opinion of the court below depends upon the sufficiency of the reason alledged by the register for his refusal. To ascertain the competency of that reason, the act of assembly referred to therein, must be examined, and an act supplemental thereto, on the same subject, approved at the same time. In the first section oflhe first act, it is provided, that no plat and certificate of survey, which purports to be made pursuant to, or by virtue of, «» entry upon a Virginia laud office treasury warranty made *447 Since the 19th day of October, 1785, shall be recorded and carried, by the register of the land office, into grant, unless the surveyor, who shall have made out the same, shall officially certify at the bottom, or on the back thereof, that the identical objects called for in the entry, or some of them, are embraced in the said survey; and that the proprietor of the said survey shall moreover file an affidavit with the register, at the time he lodges the plat, that the land called for in the entry, or the greater part thereof, is the identical land embraced within the survey aforesaid. And in the 3d section it is further provided, that no grant shall be issued upon any plat and certificate of survey of the description aforesaid, (then) on the files, or on record in the register’s office, until the surveyor, who made the survey, and the proprietor thereof, shall have, the first certified, and the latter filed .his affidavit, as above required. And by the supplemental act it is ordained, that no grant shall issue upon any survey made since the 30th day of September, 1798, on any Virginia land office treasury warrant, or which may hereafter be made upon any such warrant, until the surveyor shall give the certificate, and the proprietor make the affidavit required by the first aforesaid act.
T¡(e ^ section of the compact with' Vn-gmia remarked up^ 1 Littell, 1Í5.
These acts, in the consideration of this question, being in pari materia must be taken together, and, like the other enactments of the legislature, must be regarded as law, by all who, or whose cases come within their provisions; unless they be in violation of the constitutions of the state, or nation, or of the compact of separation between Virginia and Kentucky, which is considered as a part of the constitution of the state. In the 3d section of that compact it is provided, that all private rights and interests of lands within the district of Kentucky, derived from the laws of Virginia prior to such separation, shall remain valid and secure under the laws of the proposed sl ate, and shall be determined by the now existing laws of this state, (Virginia.) This section of the compact is selected by the court as the one between which, and the above acts of legislature, there might seem to exist a collision. The en-quiry is, does there exist a real collision? Under the laws existing in Virginia at the lime the compact was made, a private right to, or interest in, lands in the district of Kentucky, of the description contemplated by the two aforesaid acts, could not exist but in the case when an entry had-be tin made upon treasury warrant in the name of the pro- ' *448 prletor thereof, so specially and precisely as that others might locate with certainty the adjacent residuum.
An entry for lands conferred no right ¡ unless the entry was a valid one.
The acts o' J'eb’rv. 10' !>, 1816, 5 Lit p* 373 and 423, do not infringe the «ompact.
The right or interest of the proprietor was not to land generally in the district of Kentucky, but to the specific land embraced in, and contra listinguished from, the forest lands, by his entry, and whether he had a right, or interest to, and in that land, depends upon the validity of his entry, If his entry had the requisite specialty and precision, it invested him with the interest in, and right to, the land designated thereby, and embraced therein, and entitled him to have a survey made thereon, conformably thereto. The right to survey land, is not a general indiscriminate right, to survey generally and indiscriminately, but & specific right resulting from a valid entry previously made, to survey the identical land to, and in which, the locator had thereby acquired a right and interest; a survey per se, invests the person for whom it is made with no right to, or interest in, the land thereby embraced. It is only a mean whereby a preexisting right (under entry) is visibly bounded and marked; and connected with tile patent or grant which issues thereon, is record evidence afforded bv the government to the individual of the extent and dimension^of the land to, and in, which he had acquired by entry, a right and interest, the legislature, in the two aforesaid acts, professes not to interfere with, or impugn the rights or interests, which the locators of Virginia treasury warrants may have acquired in, orto lands in Kentucky, by virtue of entries thereon, under the laws of Virginia. They only restrain the proprietor thereof from transcending the circle of their rights and interests, and usurping those of others, or of the state. In doing this it is not conceived that they have, in the two aforesaid acts, either in matter or manner, violated the compact or constitutions aforesaid. They prescribe to t hose officers, the surveyor and register, certain modes of performing their duties, which do not narrow or diminish the rights or interests of those concerned. They say to the surveyor, survey the land of the applicant, but do not survey as his, the land of others, or of the state. To the applicant they say, instead of inferring from lapse of time, and your negligence, a forfeiture or abandonment by you of your right, we will still indulge you; and your interest in the land to its extent, shall be demarked by our officer, and you shall have a grant therefor; but you must enable us to do so by exhibiting your right, and designating the land which it embraces: instead *449 Of enhancing the rigor of the rules of evidence in case, we will relax them: Instead of the evidence of'disinterested and competent witnesses, we will permit you to be a witness in your own case — we will take your ex parta affidavit. This surely, in any view of it, cannot be considered as unconstitutional. If it be considered as a determination or trial of the applicant’s right to, or interest in, the land between the state and the applicant, it is a mode of trial much more favorable to the applicant than he could have had, under the laws existing in Virginia at the date of the compact. It cannot be supposed that Kentucky, by that compact, subjected her vacant lands to the arbitrary discretion and lawless usurpation of those who had made entries upon Virginia land office treasury warrants, It cannot be conceived, that having the right to the vacant lands, she had not the corresponding remedy — that she could not vindicate that right. We think she could, and that the manner of doing it. which she has adopted in the two aforesaid acts, is not unconstitutional. The applicant, in this particular case, has given no evidence of a right to the land — he has shewn no entry — nor has he shewn, in the mode prescribed by the two aforesaid acts, or in any other way, that the survey was made conformably to, or upon, the entry therein referred to.
It is, therefore, considered by the court, that the order of the court below, awarding the mandamus, be reversed, set aside, and held for naught, and that the writs be quashed and the applicant dismissed, &c.